## Richmond

ELBERT HUGHES V. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record No. 7217.

Present, All the Justices.

*Joseph P. Kilgore*, for plaintiff in error.

*A. R. Woodroof*, *Assistant Attorney General* (*Robert Y. Button*, *Attorney General*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Defendant, Elbert Hughes, was charged in an indictment with maliciously shooting into an occupied dwelling house.[1] He was

---

[1] Code § 18.1-152.

found guilty by a jury of unlawfully shooting into the dwelling and his punishment was fixed at confinement in the State penitentiary for a period of two years. Judgment was entered on the verdict and the defendant is here on a writ of error.

Defendant contends (1) that the evidence was insufficient to support his conviction, (2) that the remarks of the Commonwealth's attorney were improper and prejudicial, and (3) that the court erred in granting and refusing certain instructions.

The evidence shows that the defendant and his wife, Josephine, James Harris and his wife, Rosetta, and several other relatives of defendant's wife attended a dance on Saturday night, March 30, 1968. While at the dance the defendant became involved in arguments with several people, and he slapped his wife when she refused to leave the dance with him.

Rosetta and James Harris left the dance around 11:45 p.m. and returned to their home, a house trailer located five or six feet off a highway, about five miles from Amherst, Virginia. Around 2 o'clock in the morning defendant drove up in front of the Harris home, stopped his car, and proceeded to walk across the road toward the home. Rosetta heard the car stop, looked out of the window, and saw the defendant get out of his car with a shotgun. Defendant first called his daughter, Diane, who had stayed with the two Harris children while Rosetta and James attended the dance, and was still at the Harris house. Rosetta told Diane not to answer her father. Defendant then began calling his wife, Josephine. Harris told the defendant that Josephine was not there. Defendant insisted that she was, and he continued to call her. Defendant was using vile language toward Harris and refused to leave after having been told repeatedly to do so. Finally, Harris got his gun, fired once in the air, and again told defendant to leave. Defendant, refusing to leave, continued his vile language, and Harris fired again into the ground. Then defendant fired a shotgun blast into the home, puncturing it with numerous pellet holes. Harris returned the fire, hitting defendant in the arm.

The defendant testified that he took the shotgun with him to the Harris home because Percy Jones, who lived near the Harris home, had threatened to kill him while at the dance earlier in the evening. He said the shotgun blast that damaged the Harris home was accidental.

There is no merit in defendant's contention that the evidence was insufficient to support his conviction. A factual question was pre-

sented, and there was abundant evidence to support the jury's finding that the defendant unlawfully shot into the occupied dwelling house. Since they are the sole judges of the facts, we are bound by their findings.

■ Defendant says the comment of the Commonwealth's attorney in his argument to the jury that shooting into the trailer "was like shooting fish in a barrel" was prejudicial error, and the trial court erred in not sustaining counsel's motion to declare a mistrial.

We do not agree. The evidence shows that five people were in the house trailer when defendant fired the shotgun blast into it. The expression used was a mere figure of speech and completely congruous to the facts in evidence.

Instruction No. 1 told the jury the punishment that they might impose if they found the defendant guilty beyond a reasonable doubt either of malicious shooting or of unlawful shooting into an occupied dwelling.

The record shows that the defendant objected to the instruction, but he did not state the grounds of his objections. Since Rule 1:8, Rules of Court, requires that the grounds of objections to instructions be stated with reasonable certainty, the assignment of error will not be considered.

■ Instruction B, asked for by the defendant and refused by the trial court, told the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has a right to arm himself for his own protection and no inference of malice may be inferred from the fact that he prepared for it.

The instruction was properly refused because there was no evidence to support it. There was nothing in the evidence to justify a reasonable belief by the defendant, when he armed himself, that James Harris intended to attack him.

For the reasons stated, the judgment of conviction is

*Affirmed.*